1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                      FOR THE DISTRICT OF OREGON

11                         PORTLAND DIVISION

12  KELLY EARL PITTMAN,              )
                                     )
13                  Plaintiff,       )
                                     )        No.  CV-09-1498-HU
14       v.                          )
                                     )
15  MICHAEL J. ASTRUE,               )
    Commissioner of Social           )        OPINION & ORDER
16  Security,                        )
                                     )
17                  Defendant.       )
    _____)

18

19

    Charles Edelson
20  JAMES DODGE LAW FIRM
    825 N.E. 20th Avenue, Suite 220
21  Portland, Oregon 97232

22       Attorney for Plaintiff

23  Dwight C. Holton
    UNITED STATES ATTORNEY
24  District of Oregon
    Adrian L. Brown
25  ASSISTANT UNITED STATES ATTORNEY
    1000 S.W. Third Avenue, Suite 600
26  Portland, Oregon 97204-2902

27  / / /

28  / / /


    1 - OPINION & ORDER

David Morado
REGIONAL CHIEF COUNSEL
Brett E. Eckelberg
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

   Attorneys for Defendant

HUBEL, Magistrate Judge:

   Plaintiff Kelly Earl Pittman brings this action for judicial review of the Commissioner's decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)).

   Both parties have consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). I affirm the Commissioner's decision.

PROCEDURAL BACKGROUND

   Plaintiff applied for DIB and SSI on December 18, 2007, alleging an onset date of April 9, 2003. Tr. 166-69, 170-72. The applications were denied initially and on reconsideration. Tr. 89-94, 95-99, 104-06.

   On July 29, 2009, plaintiff, represented by counsel, appeared for a hearing before an Administrative Law Judge (ALJ). Tr. 29-71. On September 8, 2009, the ALJ found plaintiff not disabled. Tr. 74-88. The Appeals Council denied plaintiff's request for review of the ALJ's decision. Tr. 1-3.

FACTUAL BACKGROUND

   Plaintiff alleges disability based on post-traumatic stress disorder (PTSD), chronic back pain, a shoulder problem, and a "mental problem. Tr. 41, 184. At the time of the September 8,

2 - OPINION & ORDER

2009 hearing, plaintiff was forty-eight years old.  Tr. 35. Plaintiff has a twelfth grade education, with some vocational training in horticulture.  Tr. 36-37.  Plaintiff has past relevant work as a landscape laborer and security guard.  Tr. 86. Additional facts are discussed below.

### THE ALJ'S DECISION

The ALJ first determined that plaintiff had not engaged in substantial gainful activity from his alleged onset date through his date of last insured, December 31, 2008.  Tr. 79.  The ALJ found that plaintiff had severe impairments of degenerative disc disease, "post shoulder surgery," malingering, anti-social personality disorder, drug and alcohol abuse, and anxiety disorder, but that the impairments did not meet or equal, either singly or in combination, a listed impairment.  Tr. 79-80.

The ALJ then determined that plaintiff had the residual functional capacity (RFC) to perform light work, except that he (1) could not climb ladders, ropes, or scaffolds, (2) could only occasionally kneel, crouch, or bend, (3) could not crawl, twist, or reach overhead with his left upper extremity, (4) required simple work that did not require intense concentration, but he could remain on task, (5) was restricted to only minimal interaction with co-workers and brief and superficial contact with the general public, and (6) required routine low stress work that did not involve significant changes or adaptations.  Tr. at 81-82.

In making this RFC determination, the ALJ explained that while plaintiff's medically determinable impairments could reasonably be expected to produce plaintiff's alleged symptoms, plaintiff's statements regarding the intensity, persistence, and limiting

3 - OPINION & ORDER

effects of these symptoms were not entirely credible. Tr. 83.  In
support of this determination, the ALJ discussed the opinions of
plaintiff's treating physicians, the opinions of examining
physicians, as well as the opinions of a state agency examining
psychologist and medical consultant. Tr. 83-85.  Then, the ALJ
found that plaintiff had exaggerated his subjective complaints and
functional limitations based on evidence that he was able to work
after his alleged onset date, that he continued to shop for food
and attend his son's school activities despite his assertion that
he had panic attacks when he left home, and based on evidence that
he had a sporadic work history even before his alleged onset date,
raising a question as to whether his continuing unemployment was
actually due to his medical impairments. Tr. 86.

Based on the RFC, the ALJ concluded that plaintiff could not
perform his past relevant work. Id. However, considering his age,
education, work experience, and the RFC, the ALJ found that
plaintiff could perform the following jobs which exist in
significant numbers in the national economy:  call out operator,
addresser, and final assembler. Tr. 87.  Accordingly, the ALJ
concluded that plaintiff was not disabled.

STANDARD OF REVIEW & SEQUENTIAL EVALUATION

A claimant is disabled if unable to "engage in any substantial
gainful activity by reason of any medically determinable physical
or mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months[.]"  42
U.S.C. § 423(d)(1)(A).  Disability claims are evaluated according
to a five-step procedure. Baxter v. Sullivan, 923 F.2d 1391, 1395
(9th Cir. 1991).  The claimant bears the burden of proving

4 - OPINION & ORDER

disability.    Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989).    First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."    If so, the claimant is not disabled.    Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).    In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments."    Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c).    If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."    Yuckert, 482 U.S. at 141; see 20 C.F.R. §§ 404.1520(d), 416.920(d).    If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four.    Yuckert, 482 U.S. at 141.

In step four the Commissioner determines whether the claimant can still perform "past relevant work."    20 C.F.R. §§ 404.1520(e), 416.920(e).    If the claimant can, he is not disabled.    If he cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work.    Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).    If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, he is not disabled.    20 C.F.R. §§ 404.1566, 416.966.

The court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or

5 - OPINION & ORDER

1  are not supported by substantial evidence in the record as a whole.

2  Baxter, 923 F.2d at 1394.  Substantial evidence means "more than a

3  mere scintilla," but "less than a preponderance."  Id.  It means

4  such relevant evidence as a reasonable mind might accept as

5  adequate to support a conclusion.  Id.

6                              DISCUSSION

7        Plaintiff raises only a single error, conceding that the

8  findings at "steps 1 through 4 are not at issue." Pltf's Op. Brief

9  at p. 4.  Plaintiff disputes the ALJ's step five finding, generally

10 arguing that substantial evidence does not support the ALJ's

11 decision, but specifically arguing that the hypothetical presented

12 by the ALJ to the vocational expert (VE) who testified at the

13 hearing, was inconsistent with the ALJ's own findings.

14       At the hearing, the ALJ posed the following hypothetical to VE

15 Diane Weber:  an individual restricted to light work, who (1)

16 cannot climb ladders, ropes, or scaffolds, (2) can only

17 occasionally kneel, crouch, or bend, (3) cannot reach overhead with

18 the left upper extremity, (4) is restricted to simple, unskilled

19 work that does not involve maintaining intense concentration,

20 although the person can remain on task, (5) is restricted to

21 positions requiring only minimal interaction with co-workers and

22 brief and superficial contact with the general public, which the

23 ALJ described as something like "brief sales" such as grocery line

24 sales, but not helping in a store where one is expected to interact

25 with customers and help them find items, and (6) requires routine,

26 low-stress work that does not involve significant changes or

27 adaptations.  Tr. 66.

28       In response, the VE testified that such a person could not

6 - OPINION & ORDER

1   perform plaintiff's past relevant work as he performed it or as it
2   is customarily performed.  Id.  But, the VE identified several jobs
3   that such a person could perform, including laundry sorter, mail
4   clerk, and dining room attendant.   Tr. 67.

5        The ALJ then asked the VE if there were significant jobs the
6   hypothetical individual could perform if the person was restricted
7   to sedentary work instead of light work.   Id.  In response, the VE
8   identified the jobs of cashier, call-out operator, addresser, and
9   final assembler as jobs such a person could perform.   Tr. 68.

10       As noted above, in the ALJ's discussion of steps four and
11  five, she relied on an RFC which included a restriction to "simple
12  unskilled work that does not require intense concentration,
13  although he can remain on task[.]"  Tr. 82.  This is consistent
14  with the hypothetical presented to the VE.  And, the ALJ's step
15  five decision that there are other jobs in the economy which
16  plaintiff can perform, was based on the VE's testimony in response
17  to the ALJ's hypothetical.   Tr. 87.

18       Plaintiff points to an earlier part of the ALJ's decision,
19  when the ALJ is discussing steps two and three of the sequential
20  analysis.  The ALJ found that plaintiff did not have an impairment
21  or combination of impairments that met or medically equaled a
22  listed impairment.  Tr. 79.  In support of this finding, the ALJ
23  discussed plaintiff's medical impairments first, then discussed his
24  alleged mental impairments, concluding that they did not meet,
25  either singly or in combination, Listings 12.06 (anxiety
26  disorders), 12.08 (personality disorders), or 12.09 (substance
27  addiction disorders).   Tr. 80.

28       As part of the mental impairment discussion, the ALJ noted
7 - OPINION & ORDER

1  plaintiff's limitations in four areas referred to as the "Paragraph
2  B" criteria, which refers to Paragraph B of each of the listed
3  impairments.    The Paragraph B criteria for each of the three
4  relevant listed impairments are activities of daily living, social
5  functioning, concentration, persistence, and pace, and episodes of
6  decomposition.    Tr. 81.    The ALJ wrote that "[w]ith regard to
7  concentration, persistence, or pace, the claimant has marked
8  difficulties.    The claimant testified at the hearing that he
9  sometimes goes 'brain dead' and has problems following the story
10 line when watching television."    Id..

11      At the end of this section of her decision, the ALJ noted that
12 the "limitations identified in the 'paragraph B' criteria are not
13 a residual functional capacity assessment but are used to rate the
14 severity of mental impairments at steps 2 and 3 of the sequential
15 evaluation process."    Id.  She further noted that at steps 4 and 5,
16 the mental residual functional capacity assessment "requires a more
17 detailed assessment by itemizing various functions contained in the
18 broad categories found in paragraph B of the adult mental disorders
19 listings in 12.00 of the Listing of Impairments."    Id.

20      Plaintiff argues that the ALJ's hypothetical to the VE, which
21 assumed "simply, unskilled work that does not involve maintaining
22 intense concentration, although he would be able to remain on
23 task," is inconsistent with the ALJ's earlier finding that
24 plaintiff has marked difficulties with regard to concentration,
25 persistence, and pace.  Because an invalid hypothetical undermines
26 an ALJ's step five conclusion, plaintiff contends this case must be
27 reversed and remanded for further proceedings.    See Valentine v.
28 Commissioner, 574 F.3d 685, 690 (9th Cir. 2009) (hypothetical

8 - OPINION & ORDER

derived from RFC, and to be valid, it must incorporate all of a plaintiff's limitations); <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1466 n.3 (9th Cir. 1996) (incomplete hypothetical cannot "constitute competent evidence to support a finding that claimant could do the jobs set forth by the vocational expert.").

Plaintiff notes that in the Social Security Administration's Program Operations Manual System (POMS), the discussion of "marked" indicates that an inability to perform complex tasks alone is not a "marked" limitation unless it is accompanied by a limitation requiring extra supervision or assistance to perform simple tasks, or if the performance of simple tasks cannot be accomplished consistent with quality and accuracy standards, or without an unreasonable number and length of rest periods, or without undue interruptions or distractions.[1]

As defendant notes, however, the ALJ's findings at step three are not an RFC assessment, but instead are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process. Soc. Sec. Ruling (SSR) 96-8p, available at 1996 WL 374184, at *4 (explaining difference between assessing "Paragraph B" criteria as part of a step two/three analysis, and part of the step four/five analysis). Notably, the POMS discussion of a "marked" limitation appears in the section of the POMS regarding assessing listed impairments at steps two and three, and not regarding the RFC used for steps four and five.

---

[1]    Available at:
https://secure.ssa.gov/apps10/poms.nsf/lnx/0434001032#di34001032_
mentalconcentration.

9 - OPINION & ORDER

The RFC assessment at steps four and five requires a more detailed assessment based on itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings. Id. The ALJ is required to incorporate into his or her written decision the pertinent findings and conclusions based on the Psychiatric Review Technique Form. 20 C.F.R. §§ 404.1520a(e)((2), 416.920a(e)(2).

Here, the ALJ cited plaintiff's testimony regarding his sometimes inability to follow a storyline on television as support for her step two/three determination that he has marked limitations in concentration, persistence, or pace. She relied on the Psychiatric Review Technique Form findings of state agency psychologist Dorothy Anderson, Ph.D., in formulating the RFC for plaintiff. Tr. 85. There, based on her review of the record, Dr. Anderson found that plaintiff had adjustment disorder with mixed reaction of anxiety and depression, PTSD, anti-social personality disorder, and polysubstance abuse in remission. Tr. 765-73. In the functional limitation section of the form, she found that plaintiff had mild difficulties in maintaining concentration, persistence, and pace. Tr. 775.

In her itemized findings, Dr. Anderson found plaintiff moderately impaired in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to work in coordination with or proximity to others without being distracted by them. Tr. 779. In a narrative section of the report, she noted that plaintiff was capable of completing simple, two-step tasks without special instructions. Tr. 781. However, he was not capable of completing

10 - OPINION & ORDER

detailed projects because of a mild memory impairment.    <u>Id.</u>

I agree with defendant that the ALJ's hypothetical to the VE was based on substantial evidence in the record given that it accounted for Dr. Anderson's findings.  The ALJ expressly noted Dr. Anderson's finding that plaintiff had mild limitations in concentration, persistence, and pace, and also noted her ultimate conclusion that he could complete simple, two-step tasks without special instruction.    Tr. 85.    The ALJ's RFC addressed Dr. Anderson's findings by limiting plaintiff to simple work not requiring intense concentration.    The ALJ also considered Dr. Anderson's finding regarding plaintiff's distractability by limiting him to minimal interaction with co-workers, and brief, superficial contact with the general public.  And, the ALJ limited plaintiff to routine, low-stress work, not involving significant changes or adaptations.

While at first glance the ALJ's remark, in her step two and three discussion, regarding plaintiff's marked limitation in maintaining concentration, persistence, and pace, could appear to be inconsistent with the RFC, the inconsistency is explained first by noting that the assessment is different at the various steps with the step four and five RFC based on itemized findings requiring a more detailed analysis of the plaintiff's actual functional limitations, and second, by noting that the ALJ, at the step two/three discussion, had not yet thoroughly analyzed the medical evidence in the record and based her finding only on plaintiff's testimony about his inability to follow a storyline while watching television.    A more thorough discussion of the record as a whole, including the negative credibility determination

which is unchallenged in this case, followed the ALJ's step two/three discussion and carefully explained the basis for the ALJ's RFC.

Because the RFC is based on substantial evidence in the record, and because the hypothetical to the VE incorporated the RFC and accounted for plaintiff's limitations, the ALJ did not err.

CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this 25th day of February, 2011

                                  /s/ Dennis James Hubel
                                  Dennis James Hubel
                                  United States Magistrate Judge

12 - OPINION & ORDER